UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**F I L E D**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 24 2017 ★

LONG ISLAND OFFICE

-------------------------------------------------------------------------X

CHRISTINE DEMEO,

                                Plaintiff,

        -against-

INDEPENDENT GROUP HOME LIVING, ERIC BIELSKI,
DORI GEIER, ANN POTTER & SANDRA RAMIREZ (sued
in their individual and official capacities pursuant to New York
Executive Law §290 et seq.),

                           Defendants.

-------------------------------------------------------------------------X

**CV:**

**COMPLAINT**

**CV-17  1659**

**JURY TRIAL DEMANDED**

**AZRACK, J.**

**LOCKE, M. J.**

Plaintiff, CHRISTINE DEMEO, by her attorneys SCOTT MICHAEL MISHKIN P.C.,

complaining of the defendants, alleges as follows:

## PRELIMINARY STATEMENT

This case is brought for a money judgment for actual, punitive, compensatory and

emotional damages suffered by Christine Demeo, (Plaintiff) as a result of Defendant Independent

Group Home Living's ("IGHL") sexual harassment creating a hostile work environment along

with it's discrimination against Plaintiff due to her gender in violation of Title VII of the Civil

Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et. seq. (Title VII), and for IGHL's sexual

harassment of Plaintiff creating a hostile work environment and gender discrimination in

violation of New York Executive Law §290 et seq. (NYEL), and for Eric Bielski's ("Bielski"),

Dori Geier's ("Geier"), Ann Potter's ("Potter") and Sandra Ramirez' ("Ramirez") in their

individual and official capacity, aiding, abetting, inciting, compelling and/or coercing the

conduct giving rise to Plaintiff's sexual harassment and hostile work environment and for

1

Geier's, Potter's and Ramirez' aiding, abetting, inciting, compelling and/or coercing the conduct giving rise to the Plaintiff's gender discrimination claims in violation of NYEL.

## JURISDICTION

FIRST:        The jurisdiction of the Court over this controversy is based upon 28 U.S.C. § 1331, as this matter is raised under 42 U.S.C. § 2000(e) *et seq.*

SECOND:        The Court also has supplemental jurisdiction over this case pursuant to 28 U.S.C. § 1367 (a), as Plaintiff's NYEL claims form part of the same case and controversy.

## VENUE

THIRD:        The unlawful practices alleged below were committed within Suffolk County in the State of New York.

FOURTH:        At the time of the unlawful practices, plaintiff was a resident of Suffolk County in the Eastern District of the United States District Court of New York.

FIFTH:        Defendant IGHL conducted business in Manorville, Long Island, in Suffolk County in the Eastern District of the United States District Court of the State of New York.

SIXTH:        All of the events giving rise to the claims set forth herein occurred at IGHL in it's Manorville location, which is located in Suffolk County, New York, and this court is hereby the proper venue under 28 U.S.C. §1391(b).

## PARTIES

SEVENTH:        Plaintiff is a female and worked at IGHL from November 27, 2006 to March 8, 2016.

2

EIGHTH:    Plaintiff was a Direct Care Counselor initially upon her employment at IGHL and then hired as a Developmental Specialist Assistant for the remainder of her career at IGHL, when she was wrongfully terminated from her position on March 8, 2016.

NINTH:    IGHL is a not-for-profit organization that provides services and housing for the developmentally disabled.

TENTH:    IGHL is an employer as defined by Title VII and NYEL.

ELEVENTH: Bielski was employed as the Community Recreation and Athletic Specialist at IGHL at all relevant times alleged within this complaint.

TWELVTH:   Bielski aided, abetted, incited, compelled and/or coerced the acts against Plaintiff that are forbidden under NYEL.

THIRTEENTH:    Bielski is named in his official and individual capacity because he knew or should have known his and IGHL's ongoing willful and malicious actions against Plaintiff violated NYEL.

FOURTEENTH:    Bielski personally participated in the conduct giving rise to Plaintiff's sexual harassment and hostile work environment claims and is thereby individually and personally liable for his discriminatory treatment against Plaintiff under the NYEL.

FIFTEENTH.   Geier was employed as the Senior Director of Human Resources at IGHL at all relevant times alleged within this complaint.

SIXTEENTH.   Geier had the authority to hire, fire and discipline employees at IGHL.

SEVENTEENTH.    Geier had the power to do more than carry out personnel decisions made by others and is thereby individually liable for her discriminatory treatment against Plaintiff.

3

EIGHTEENTH.        Geier aided, abetted, incited, compelled and/or coerced the acts against Plaintiff that are forbidden under NYEL.

NINETEENTH.        Geier is named in her official and individual capacity because she knew or should have known her and IGHL's ongoing willful and malicious actions against Plaintiff violated NYEL.

TWENTIETH.  Geier personally participated in the conduct giving rise to Plaintiff's sexual harassment and hostile work environment claims and is thereby individually and personally liable for her discriminatory treatment against Plaintiff under the NYEL.

TWENTY-FIRST.        Potter was employed as the Director of Human Resources at IGHL at all relevant times alleged within this complaint.

TWENTY-SECOND.   Potter aided, abetted, incited, compelled and/or coerced the acts against Plaintiff that are forbidden under NYEL.

TWENTY-THIRD.        Potter is named in her official and individual capacity because she knew or should have known her and IGHL's ongoing willful and malicious actions against Plaintiff violated NYEL.

TWENTY-FOURTH.   Potter personally participated in the conduct giving rise to Plaintiff's sexual harassment and hostile work environment claims and is thereby individually and personally liable for her discriminatory treatment against Plaintiff under the NYEL.

TWENTY-FIFTH.        Ramirez was employed as the Assistant Director of Human Resources at IGHL at all relevant times alleged within this complaint.

TWENTY-SIXTH.        Ramirez had the authority to hire, fire and discipline employees at IGHL.

4

TWENTY-SEVENTH. Ramirez had the power to do more than carry out personnel decisions made by others and is thereby individually liable for her discriminatory treatment against Plaintiff.

TWENTY-EIGHTH.   Ramirez aided, abetted, incited, compelled and/or coerced the acts against Plaintiff that are forbidden under NYEL.

TWENTY-NINTH.   Ramirez is named in her official and individual capacity because she knew or should have known her and IGHL's ongoing willful and malicious actions against Plaintiff violated NYEL.

THIRTIETH.   Ramirez personally participated in the conduct giving rise to Plaintiff's sexual harassment and hostile work environment claims and is thereby individually and personally liable for her discriminatory treatment against Plaintiff under the NYEL.


## FACTS

THIRTY-FIRST.   Plaintiff began working at IGHL as a Direct Care Counselor in November 2006 in IGHL's Wading River location.

THIRTY-SECOND.   In 2010, Plaintiff became a Developmental Specialist Assistant and began working in the Manorville location of IGHL.

THIRTY-THIRD.   Plaintiff's position responsibilities included assisting individuals with daily living tasks such as cooking, grooming, household chores, shopping and recreational activities.

THIRTY-FOURTH.   Plaintiff enjoyed a dedicated ten (10) year career at IGHL and was never written up or disciplined during her employment there.

THIRTY-FIFTH.      After Plaintiff began working in the Manorville location, she met Bielski, and began working very closely with him.

THIRTY-SIXTH.      They enjoyed a friendly but professional relationship at first.

THIRTY-SEVENTH.   Beginning on or about 2011, Bielski began paying more attention to Plaintiff and even recommended her to work in specific programs at IGHL which he was also involved in or in charge of.

THIRTY-EIGHTH.     Bielski began to confide more intimately in Plaintiff, and began to express emotional feelings for her.

THIRTY-NINTH.      Beilski also confided in Plaintiff that he was unhappy in his marriage.

FORTIETH.     Bielski would consistently text message Plaintiff and when she was out of work sick in 2013, Bielski constantly communicated with her to see how she was doing, and told her he missed her.

FORTY-FIRST. From on or about 2013 to 2015, Bielski persistently pursued Plaintiff romantically, and finally on or around 2015, Plaintiff developed reciprocal emotional feelings for Bielski.

FORTY-SECOND.      Bielski would tell Plaintiff he loved her and that he wished she was with him instead of his wife.  However, in June 2015, Bielski told Plaintiff that he and his wife purchased and moved into a new house.

FORTY-THIRD.      Plaintiff realized at this point that she should not be involved in any way other than professionally with Bielski and told him to stop calling, texting, and sending flowers and gifts to her.

6

FORTY-FOURTH. Bielski refused to do so, and continued attempting to contact her. Bielski even went as far as contacting Plaintiff's friends to try to reach her.

FORTY-FIFTH. Plaintiff even resorted to quitting work in one of Bielski's programs in order to break the ties.

FORTY-SIXTH. Bielski still vigorously pursued Plaintiff while professing his love to her.

FORTY-SEVENTH. Plaintiff once again told Bielski to stop and that he was creating an extremely stressful work environment for her.

FORTY-EIGHTH. Bielski continued to harass Plaintiff by attempting to contact her and by leaving flowers on her car.

FORTY-NINTH. Plaintiff, as a result, had to seek mental therapy to try to deal with this hostile and stressful atmosphere at work.

FIFTIETH. On or about October 2015 Plaintiff was on vacation and Bielski was still trying to text her, so Plaintiff resorted to blocking his calls/texts on her phone.

FIFTY-FIRST. However, throughout the Fall of 2015, Bielski continued to reach out to Plaintiff's friends to try to contact her. Plaintiff continued to ignore Bielski as best she could while at work.

FIFTY-SECOND. On February 22, 2016, Plaintiff was called into Human Resources to meet with Potter and Ramirez.

FIFTY-THIRD. Ramirez informed Plaintiff that due to an uncomfortable work environment, she was being transferred to Hampton Bays.

FIFTY-FOURTH. Ramirez and Potter refused to tell Plaintiff why she was being transferred specifically, or to offer any other details about the reason for the transfer.

FIFTY-FIFTH.          Plaintiff requested to speak to the Senior Director of HR, Geier, and Geier subsequently joined the meeting via teleconference.

FIFTY-SIXTH.          Geier stated the same thing as Ramirez and Potter, and refused to disclose any specifics regarding the transfer.

FIFTY-SEVENTH.     In fact, Geier stated harshly to Plaintiff that "You know what you did!"

FIFTY-EIGHTH.       Plaintiff did not receive a verbal answer from Potter, Ramirez or Geier as to why she was being transferred nor regarding who complained about being uncomfortable at work because of her.

FIFTY-NINTH.        Plaintiff asked if the transfer was because of Bielski, and was ignored.

SIXTIETH.        Geier told Plaintiff that she could accept the transfer or resign.

SIXTY-FIRST.          Geier also threatened Plaintiff with a lower salary if she did not transfer.

SIXTY-SECOND.     Plaintiff informed Potter, Ramirez and Geier that a transfer to Hampton Bays, which was 20 miles further, would be a hardship on her due to her being a single parent to a school-age child.

SIXTY-THIRD.        Geier merely told her "Too bad, leave earlier."

SIXTY-FOURTH.     When Plaintiff asked to speak to the Director of the Day Habitat, Tom Trakoval, Geier snapped "No, that's not happening!"

SIXTY-FIFTH.         At this point, Geier suspended Plaintiff for a week, and told her to give them her decision by March 2, 2016 or they will assume she resigned.

8

SIXTY-SIXTH.        Geier also told Plaintiff that she was now forbidden to enter the
Manorville location for any reason, and that they would collect her belongings and get them to
her.

SIXTY-SEVENTH.      Plaintiff was still not advised of any valid reason as to why she
was being adversely affected in her employment like this.

SIXTY-EIGHTH.       Upon information and belief, Bielski was not directed to transfer or
resign, was not banned from any portion of IGHL, and was not disciplined for his role in the
relationship with Plaintiff.

SIXTY-NINTH.        On this same day, February 22, 2016, Plaintiff lodged a formal
complaint to Human Resources claiming sexual harassment and hostile work environment.  She
informed Human Resources that after multiple attempts at trying to get Bielski to stop his
sexual overtures, that he persisted and created a hostile work environment for her.

SEVENTIETH. In response, Plaintiff received a letter, which was sent overnight to her
from Geier, which stated that it was confirmed she was in a romantic relationship with a co-
worker and that her terminating that relationship disrupted the workplace.  It further stated that
the decision to transfer her was final and that if she did not acquiesce to this decision by March
2, 2016, it will be assumed she resigned.

SEVENTY-FIRST.      Geier, Ramirez and Potter completely ignored Plaintiff's
complaints of sexual harassment and hostile work environment, and totally failed to investigate
said complaints.

SEVENTY-SECOND.  Reluctantly, Plaintiff accepted the involuntary transfer because she
needed her job, as a single parent.

9

SEVENTY-THIRD.   Bielski did not get suspended, nor banned from entering an IGHL facility nor transferred.

SEVENTY-FOURTH.   On March 8, 2016, Plaintiff was again summoned to Human Resources where she was told that she emailed a harassing picture to a co-worker.

SEVENTY-FIFTH.   In actuality, Plaintiff emailed a co-worker pictures from a work-related field trip taken, and accidentally included a picture of her own bare buttocks. This picture was taken to show her doctor how her medicine was working on her skin condition.

SEVENTY-SIXTH.   Plaintiff was completely surprised that this picture was accidentally included in the email, and explained to Human Resources that it was a mistake and that she was sorry.

SEVENTY-SEVENTH.   However, rather than accept Plaintiff's apology for her mistake, IGHL terminated Plaintiff's employment without listening to her explanation.

SEVENTY-EIGHTH.   IGHL terminated Plaintiff as of March 8, 2016, and also cut off her health insurance as of that date, even though it was paid through March 31, 2016. Plaintiff was advised she would receive a COBRA form in the mail regarding a continuation of her health insurance.

SEVENTY-NINTH.   IGHL also fought to have unemployment benefits denied to Plaintiff subsequent to her termination. They were, however, unsuccessful at this attempt.

EIGHTIETH.   Upon information and belief, subsequent to Plaintiff's termination, IGHL disseminated the photo of Plaintiff's buttocks to many other employees causing further humiliation.

EIGHTY-FIRST.    On or about June 24, 2016, Plaintiff saw an IGHL manager, at a social function who approached her and stated to her that "they [IGHL] were wrong to treat you like that." This encounter was also witnessed by a friend of Plaintiff.

EIGHTY-SECOND.    Plaintiff still must seek professional help regarding her emotional issues stemming from the hostile work environment and adverse treatment she experienced from IGHL.

EIGHTY-THIRD.    Plaintiff has been attempting to find alternative employment, but upon information and belief, IGHL repeatedly provided negative adverse information regarding her to potential employers when contacted as a reference.  As such, Plaintiff was forced to change career paths.

EIGHTY-FOURTH.    Prior to filing this civil action, Plaintiff timely filed a written charge asserting discrimination based on sexual harassment and gender within three hundred (300) days of the discrimination with the U.S. Equal Employment Opportunity Commission (hereinafter referred to as "EEOC").

EIGHTY-FIFTH.    Plaintiff has filed this action prior to the expiration of ninety (90) days after receiving her Notice of Right to Sue from the EEOC.

## AS AND FOR A FIRST CAUSE OF ACTION – SEXUAL HARASSMENT & HOSTILE WORK ENVIRONMENT AGAINST IGHL IN VIOLATION OF TITLE VII

EIGHTY-SIXTH.    Plaintiff repeats and realleges the statements from ONE through EIGHTY-FIFTH as if fully stated herein.

EIGHTY-SEVENTH.    Plaintiff was a member of a protected class in that she was a female.

EIGHTY-EIGHTH.      Bielski was a Recreation and Athletic Specialist at IGHL.

EIGHTY-NINTH.      Plaintiff was qualified for her position as a Developmental Specialist Assistant, and was hired into this position by IGHL in 2010 after working four years as a Direct Care Counselor for IGHL.

NINETIETH.   Plaintiff suffered the adverse employment act of being pressured to go out with Bielski and to continue a romantic relationship with him after said relationship had ended.

NINETY-FIRST.      The terms and conditions of Plaintiff's employment were materially altered in that she had to try to avoid Bielski throughout the workday as he was relentless in his quest to continue a relationship with Plaintiff.  In addition, Plaintiff had to change her work schedule in order to try to avoid working closely with Bielski as Bielski would not leave her alone.

NINETY-SECOND.   Even though Plaintiff asked Bielski to stop many times and to leave her alone, over and over, Bielski, a married man, continued to harass her, creating a hostile work atmosphere for Plaintiff.

NINETY-THIRD.      Plaintiff complained to Geier, Ramirez and Potter about the sexual harassment and hostile work environment.

NINETY-FOURTH.   None of these Human Resources representatives did anything to address, investigate or remedy the situation.

NINETY-FIFTH.      As a result, Plaintiff suffered damages and even had to seek professional help to mentally deal with the harassment.

NINETY-SIXTH.      This is sexual harassment and creation of a hostile work environment in violation of Title VII.

12

## AS AND FOR A SECOND CAUSE OF ACTION – RETALIATION UNDER TITLE VII

NINETY-SEVENTH.   Plaintiff repeats and realleges paragraphs ONE through NINETY-SIXTH as if fully set for herein.

NINETY-EIGHTH.      Plaintiff engaged in protected activity in February 22, 2016 when she complained to Geier, Ramirez and Potter about the sexual harassment she was experiencing from Bielski.

NINETY-NINTH.      Therefore, IGHL had knowledge of Plaintiff's protected activity, specifically her complaints of sexual harassment and a resulting hostile work environment.

ONE HUNDREDTH.   On March 8, 2016, a mere two weeks later, Plaintiff was terminated by IGHL for mistakenly sending a picture to a co-worker of her buttocks, which was meant for her doctor.

ONE HUNDRED FIRST.      Even after explaining that this picture was mistakenly sent, IGHL still used the pretext of "harassment" to terminate Plaintiff.

ONE HUNDRED SECOND.   IGHL's adverse treatment, specifically terminating Plaintiff's employment is retaliation and is causally related to her protected activity as Plaintiff had never had disciplinary issues in the past, and now only two weeks after her complaint, she is terminated for a minor mistake.  This is retaliation against her in violation of Title VII.

ONE HUNDRED THIRD.      Plaintiff has not been able to find comparable employment and due to IGHL giving negative references, Plaintiff has had to find a new career path.

ONE HUNDRED FOURTH.   IGHL has even furthered their retaliation against Plaintiff by fighting the issuing of unemployment benefits for Plaintiff.

ONE HUNDRED FIFTH.      Because of IGHL's retaliation, Plaintiff has suffered damages, including loss of wages and health insurance.

## AS AND FOR A THIRD CAUSE OF ACTION –GENDER DISCRIMINATION
## UNDER TITLE VII

ONE HUNDRED SIXTH.      Plaintiff repeats and realleges paragraphs ONE through ONE HUNDRED-FIFTH as if fully set for herein.

ONE HUNDRED SEVENTH. Plaintiff, a female, was treated adversely in the workplace as compared to her similarly situated male co-workers.

ONE HUNDRED EIGHTH.    Plaintiff was directed to transfer to a different position, or resign and also was suspended from her position after it was discovered she had a past relationship with a co-worker.

ONE HUNDRED NINTH.      Bielski, a similarly situated male co-worker, who was also involved in a relationship, did not get disciplined as Plaintiff did.

ONE HUNDRED TENTH.     Several male IGHL employees were known to have had romantic relationships with co-workers that were married and were not disciplined for it.

ONE HUNDRED ELEVENTH.      IGHL discriminated against Plaintiff because she is a female as she was disciplined for her relationship with a co-worker, and the male employees of IGHL are not disciplined for the same acts.

ONE HUNDRED TWELFTH. Plaintiff was suspended, directed to transfer to a different department or resign, and banned from returning for any reason to her former work location.

ONE HUNDRED THIRTEENTH.      IGHL proffered the reason that the relationship ending caused a disruption in the workplace, however this reason is pretext as Bielski, a male, did not suffer any repercussions and Plaintiff was actually making an effort to not disrupt the workplace.  The real reason was gender discrimination as Plaintiff was a female and was punished for the relationship, where male employees went unpunished for the same acts.

14

## AS AND FOR A FOURTH CAUSE OF ACTION – SEXUAL HARASSMENT & HOSTILE WORK ENVIRONMENT AGAINST IGHL UNDER NYEL

ONE HUNDRED FOURTEENTH.     Plaintiff repeats and realleges paragraphs ONE through ONE HUNDRED THIRTEENTH as if fully set forth herein.

ONE HUNDRED FIFTEENTH.     Plaintiff was a member of a protected class in that she was a female.

ONE HUNDRED SIXTEENTH.     Plaintiff was qualified for her position as a Developmental Specialist Assistant, and was hired into this position by IGHL in 2010 after working four years as a Direct Care Counselor for IGHL.

ONE HUNDRED SEVENTEENTH.   Plaintiff suffered the adverse employment act of being pressured to go out with Bielski and to continue a romantic relationship with him after said relationship had ended.

ONE HUNDRED EIGHTEENTH.     The terms and conditions of Plaintiff's employment were materially altered in that she had to try to avoid Bielski throughout the workday as he was relentless in his quest to continue a relationship with Plaintiff.  In addition, Plaintiff had to change her work schedule in order to try to avoid working closely with Bielski as Bielski would not leave her alone.

ONE HUNDRED NINETEENTH.     Even though Plaintiff asked Bielski to stop many times and to leave her alone, over and over, Bielski, a married man, continued to harass her, creating a hostile work atmosphere for Plaintiff.

ONE HUNDRED TWENTIETH.     Plaintiff complained to Geier, Ramirez and Potter about the sexual harassment and hostile work environment.

15

ONE HUNDRED TWENTY-FIRST.  None of these Human Resources representatives did anything to address, investigate or remedy the situation.

ONE HUNDRED TWENTY-SECOND.      As a result, Plaintiff suffered extreme distress and anxiety due to the hostile work environment, and even sought professional help to deal with the emotional damages.

ONE HUNDRED TWENTY-THIRD. IGHL, therefore is in violation of NYEL.

## AS AND FOR A FIFTH CAUSE OF ACTION – SEXUAL HARASSMENT AGAINST BIELSKI UNDER NYEL

ONE HUNDRED TWENTY-FOURTH.      Plaintiff repeats and realleges paragraphs ONE through ONE HUNDRED TWENTY-THIRD as if fully set for herein.

ONE HUNDRED TWENTY-FIFTH.  Bielski continued to romantically and sexually pursue and harass Plaintiff after she had made it very clear to him many times to stop.

ONE HUNDRED TWENTY-SIXTH.  Even though Bielski was married, he would not accept that Plaintiff did not want to continue a personal relationship with him, and made the work environment incredibly stressful and tense for Plaintiff.

ONE HUNDRED TWENTY-SEVENTH.      Plaintiff even expressed to Bielski that his failure to stop harassing her was making her physically ill, however Bielski still continued to harass her.

ONE HUNDRED TWENTY-EIGHTH.      The sexual harassment from Bielski was such that it created a hostile work environment and materially altered the terms and conditions of Plaintiff's employment.

16

ONE HUNDRED TWENTY-NINTH. Bielski, personally, willfully and maliciously engaged in the conduct that subjected Plaintiff to sexual harassment and hostile work environment.

ONE HUNDRED THIRTIETH.        Bielski, in his individual and official capacity, violated NYEL with his conduct against Plaintiff.

ONE HUNDRED THIRTY-FIRST.    As a result, Plaintiff suffered extreme distress which actually manifested into physical illness at times.

### AS AND FOR A SIXTH CAUSE OF ACTION – SEXUAL HARASSMENT AGAINST GEIER, RAMIREZ & POTTER UNDER NYEL

ONE HUNDRED THIRTY-SECOND.        Plaintiff repeats and realleges paragraphs ONE through ONE HUNDRED THIRTY-FIRST as if fully set forth herein.

ONE HUNDRED THIRTY-THIRD.   Plaintiff complained of sexual harassment and hostile work environment to Geier, Ramirez and Potter, who are all Directors of Human Resources at IGHL.

ONE HUNDRED THIRTY-FOURTH.        Geier, Ramirez and Potter all did nothing in response to Plaintiff's complaint.  They did not investigate whatsoever.

ONE HUNDRED THIRTY-FIFTH.    Geier, Ramirez and Potter were in a position to take action against the sexual harassment and hostile work environment but did nothing about it.

ONE HUNDRED THIRTY-SIXTH.    Geier, Ramirez and Potter aided and abetted the sexual harassment and hostile work environment that Plaintiff was experiencing as they were the individuals that were responsible for investigating charges of sexual harassment and hostile work environment, and intentionally and willfully failed to do so, causing Plaintiff to suffer more stress and anxiety.

17

ONE HUNDRED THIRTY-SEVENTH.        This is in violation of NYEL.

## AS AND FOR A SEVENTH CAUSE OF ACTION – RETALIATION AGAINST IGHL UNDER NYEL

ONE HUNDRED THIRTY-EIGHTH. Plaintiff repeats and realleges paragraphs ONE through ONE HUNDRED THIRTY-SEVENTH as if fully set forth herein.

ONE HUNDRED THIRTY-NINTH.   Plaintiff engaged in protected activity on February 22, 2016 when she complained to Geier, Ramirez and Potter about the sexual harassment she was experiencing from Bielski.

ONE HUNDRED FORTIETH. Therefore, IGHL had knowledge of Plaintiff's protected activity, specifically her complaints of sexual harassment and a resulting hostile work environment.

ONE HUNDRED FORTY-FIRST.     On March 8, 2016, a mere two weeks later, Plaintiff was terminated by IGHL for mistakenly sending a picture to a co-worker of her buttocks, which was meant for her doctor who was treating her skin condition.

ONE HUNDRED FORTY-SECOND. Even after explaining that this picture was mistakenly and not intentionally sent to the co-worker, IGHL still used the pretext of "harassment" against Plaintiff to terminate her.

ONE HUNDRED FORTY-THIRD.    IGHL's adverse treatment, specifically terminating Plaintiff's employment, is retaliation against her in violation of Title VII.

ONE HUNDRED FORTY-FOURTH. Plaintiff has not been able to find comparable employment and due to IGHL giving negative references, Plaintiff has had to find a new career path.

ONE HUNDRED FORTY-FIFTH.     IGHL has even furthered their retaliation against Plaintiff by fighting the issuing of unemployment benefits for Plaintiff.

ONE HUNDRED FORTY-SIXTH.     As a result, Plaintiff has suffered damages and loss of earnings.

ONE HUNDRED FORTY-SEVENTH.     IGHL's adverse treatment of Plaintiff is retaliation against her in violation of Title VII.

## AS AND FOR A EIGHTH CAUSE OF ACTION – RETALIATION AGAINST GEIER, RAMIREZ & POTTER UNDER NYEL

ONE HUNDRED FORTY-EIGHTH.  Plaintiff repeats and realleges paragraphs ONE through ONE HUNDRED FORTY-SEVENTH as if fully set forth herein.

ONE HUNDRED FORTY-NINTH.     Geier, as the Senior Director of Human Resources at IGHL, had the power to make decisions regarding the Plaintiff's employment.

ONE HUNDRED FIFTIETH.  Ramirez, as the Assistant Director of Human Resources at IGHL, had the power to make decisions regarding Plaintiff's employment.

ONE HUNDRED FIFTY-FIRST.     Potter, as the Director of Human Resources at IGHL, had the power to make decisions regarding Plaintiff's employment.

ONE HUNDRED FIFTY-SECOND.  Plaintiff engaged in protected activity on February 22, 2016 when she complained to Geier, Ramirez and Potter about the sexual harassment she was experiencing from Bielski and the resultant hostile work environment.

ONE HUNDRED FIFTY-THIRD.     On March 8, 2016, a mere two weeks later, Plaintiff was terminated by Geier, Ramirez, and Potter for mistakenly sending a picture to a co-worker of her buttocks, which was meant for her doctor.

ONE HUNDRED FIFTY-FOURTH.   Even after explaining that this picture was mistakenly and not intentionally sent, Geier, Ramirez and Potter still used the pretext of "harassment" to terminate Plaintiff.

ONE HUNDRED FIFTY-FIFTH.       Geier directly participated in the termination of Plaintiff and is therefore in violation of NYEL for her willful and intentional retaliation of Plaintiff for her complaint of sexual harassment and hostile work environment.

ONE HUNDRED FIFTY-SIXTH.       Ramirez directly participated in the termination of Plaintiff and is therefore in violation of NYEL for her willful and intentional retaliation of Plaintiff for her complaint of sexual harassment and hostile work environment.

ONE HUNDRED FIFTY-SEVENTH. Potter directly participated in the termination of Plaintiff and is therefore in violation of NYEL for her willful and intentional retaliation of Plaintiff for her complaint of sexual harassment and hostile work environment.

ONE HUNDRED FIFTY-EIGHTH.    Geier aided and abetted the acts that constitute willful retaliation against Plaintiff for her protected activity of complaining of sexual harassment resulting in a hostile work environment.

ONE HUNDRED FIFTY-NINTH.       Ramirez aided and abetted the acts that constitute willful retaliation against Plaintiff for her protected activity of complaining of sexual harassment resulting in a hostile work environment.

ONE HUNDRED SIXTIETH. Potter aided and abetted the acts that constitute willful retaliation against Plaintiff for her protected activity of complaining of sexual harassment resulting in a hostile work environment.

## AS AND FOR A NINTH CAUSE OF ACTION –GENDER DISCRIMINATION AGAINST IGHL UNDER NYEL

ONE HUNDRED SIXTY-FIRST.      Plaintiff repeats and realleges paragraphs ONE through ONE HUNDRED SIXTIETH as if fully set forth herein.

ONE HUNDRED SIXTY-SECOND.        Plaintiff, a female, was treated adversely in the workplace as compared to her similarly situated male co-workers.

ONE HUNDRED SIXTY-THIRD.      Plaintiff was directed to transfer to a different position, or resign and also was suspended from her position after it was discovered she had a past relationship with a co-worker.

ONE HUNDRED SIXTY-FOURTH.   Bielski, a similarly situated male co-worker, who was also involved in the relationship, did not get disciplined as Plaintiff did.

ONE HUNDRED SIXTY-FIFTH.      Several male IGHL employees were known to have had romantic relationships with co-workers that were married and were not disciplined for it.

ONE HUNDRED SIXTY-SIXTH.      IGHL discriminated against Plaintiff because she is a female as she was disciplined for her relationship with a co-worker, and the similarly situated male employees of IGHL are not disciplined for the same acts.

ONE HUNDRED SIXTY-SEVENTH. Plaintiff was suspended, directed to transfer to a different department or resign, and banned from returning for any reason to her former work location.

ONE HUNDRED SIXTY-EIGHTH.   IGHL offered the reason that the relationship ending caused a disruption in the workplace, however this reason is pretext as Bielski, a similarly situated male, did not suffer any repercussions and Plaintiff was even trying to avoid him as to not disrupt the workplace.  The real reason was gender discrimination as Plaintiff was

a female and was punished for the relationship, where similarly situated male employees went unpunished for the same acts.

## AS AND FOR A TENTH CAUSE OF ACTION – GENDER DISCRIMINATION AGAINST GEIER, RAMIREZ & POTTER UNDER NYEL

ONE HUNDRED SIXTY-NINTH.    Plaintiff repeats and realleges paragraphs ONE through ONE HUNDRED SIXTY-EIGHTH as if fully set forth herein.

ONE HUNDRED SEVENTIETH.    Geier, Ramirez and Potter all had the power and authority to make changes to Plaintiff's employment at IGHL.

ONE HUNDRED SEVENTY-FIRST. Plaintiff, a female, was directed by Geier, Ramirez and Potter to transfer to a different position, or resign and also was suspended from her position after it was discovered she had a past relationship with a co-worker, Bielski.

ONE HUNDRED SEVENTY-SECOND.    Bielski, a male, was not directed to transfer or resign, nor suspended from his position for being in this same relationship with Plaintiff.

ONE HUNDRED SEVENTY-THIRD.    Geier directly participated in the discipline of Plaintiff for her relationship with Bielski.

ONE HUNDRED SEVENTY-FOURTH.    Ramirez directly participated in the discipline of Plaintiff for her relationship with Bielski.

ONE HUNDRED SEVENTY-FIFTH. Potter directly participated in the discipline of Plaintiff for her relationship with Bielski.

ONE HUNDRED SEVENTY-SIXTH. Geier, Ramirez and Potter aided and abetted the acts that constituted gender discrimination against Plaintiff, specifically disciplining her for a past relationship with Bielski, while Bielski did not receive discipline.

ONE HUNDRED SEVENTY-SEVENTH.    As a result, Plaintiff suffered damages, including severe emotional damages for which she has sought professional help.


**WHEREFORE, Plaintiff demands a judgment against the Defendants as follows:**

1. For a money judgment representing actual damages for IGHL's sexual harassment of Plaintiff in violation of Title VII, in an amount to be determined by a jury;

2. For a money judgment representing compensatory damages for IGHL's sexual harassment of Plaintiff in violation of Title VII, in an amount to be determined by a jury;

3. For a money judgment representing emotional damages for IGHL's sexual harassment of Plaintiff in violation of Title VII, in an amount to be determined by a jury;

4.    For a money judgment representing punitive damages for IGHL's sexual harassment of Plaintiff in violation of Title VII, in an amount to be determined by a jury;

5.    For a monetary judgment of actual damages against all Defendants, jointly and severally, for its sexual harassment of Plaintiff in violation of NYEL;

6.    For a monetary judgment of compensatory damages against all Defendants, jointly and severally, for its sexual harassment of Plaintiff in violation of NYEL;

7.    For a monetary judgment of emotional damages against all Defendants, jointly and severally, for its sexual harassment of Plaintiff in violation of NYEL;

8.    For a money judgment representing actual damages for IGHL's retaliation against Plaintiff in violation of Title VII, in an amount to be determined by a jury;

9.      For a money judgment representing compensatory damages for IGHL's retaliation against Plaintiff in violation of Title VII, in an amount to be determined by a jury;

10.   For a money judgment representing emotional damages for IGHL's retaliation against Plaintiff in violation of Title VII, in an amount to be determined by a jury;

11.      For a money judgment representing punitive damages for IGHL's retaliation against Plaintiff in violation of Title VII, in an amount to be determined by a jury;

12.      For a monetary judgment of actual damages against all Defendants, jointly and severally, for its retaliation against Plaintiff in violation of NYEL;

13.      For a monetary judgment of compensatory damages against all Defendants, jointly and severally, for its retaliation against Plaintiff in violation of NYEL;

14.      For a monetary judgment of emotional damages against all Defendants, jointly and severally, for its retaliation against Plaintiff in violation of NYEL;

15.      For a monetary judgment against IGHL representing actual damages for its gender discrimination against Plaintiff under Title VII;

16.      For a monetary judgment against IGHL representing compensatory damages for its gender discrimination against Plaintiff under Title VII;

17.      For a monetary judgment against IGHL representing emotional damages for its gender discrimination against Plaintiff under Title VII;

18.      For a monetary judgment against IGHL representing punitive damages for its gender discrimination against Plaintiff under Title VII;

19.      For a monetary judgment of actual damages against all Defendants, jointly and severally, for its gender discrimination against Plaintiff in violation of NYEL;

20.     For a monetary judgment of compensatory damages against all Defendants, jointly and severally, for its gender discrimination against Plaintiff in violation of NYEL;

21.     For a monetary judgment of emotional damages against all Defendants, jointly and severally, for its gender discrimination against Plaintiff in violation of NYEL;

22.     For equitable and injunctive relief;

23.      For attorney's fees and costs; and

24.     For such other and further relief as may be just and proper.


## JURY DEMAND

Plaintiff herein demands a trial by jury of all issues in this action.

Dated:  Islandia, New York
        March 22, 2017

                                        SCOTT MICHAEL MISHKIN, P.C.


                                        By:      Kathleen A Tirelli, Esq.
                                                 One Suffolk Square, Suite 240
                                                 Islandia, New York 11749
                                                 Tel:  (631)-234-1154
                                                 ktirellimishkin@optonline.net